UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Sara A.,  

      Plaintiff,

v.

Kilolo Kijakazi,  
Acting Commissioner of Social Security,

      Defendant.

Civ. No. 21-1391 (WMW/BRT)

**REPORT AND RECOMMENDATION**

---

James H. Greeman, Esq., Greeman Toomey, counsel for Plaintiff.

Linda H. Green, Esq., Social Security Administration, counsel for Defendant.

---

BECKY R. THORSON, United States Magistrate Judge.

Pursuant to 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability benefits. This matter is before the Court on the parties' cross–motions for summary judgment, in accordance with D. Minn. LR 7.2(c)(1). For the reasons stated below, this Court concludes that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence in the record. Therefore, this Court recommends that Plaintiff's motion be denied and Defendant's motion be granted.

## BACKGROUND

Plaintiff is a 54-year-old woman, and was 49 years old when her insurance status expired.[1] (Tr. 253.)[2] Following high school, she attended one year of college and has previously worked as a member service representative at a credit union, an administrative clerk, and a server. (Tr. 96–97.) Following a motorcycle accident in 2014, Plaintiff's right leg was amputated below the knee. (Tr. 100, 386.) Plaintiff was also involved in a second accident in 2015, which affected her emotionally, but she suffered no notable physical injuries from this. (Tr. 101.) The physical limitations arising from her amputation resulting from the first accident are the primary focus in this appeal.

After the accidents, Plaintiffs continued to work part time as a waitress until April 2016 when her employer ceased operating. (Tr. 382, 388, 392, 398–400, 403–04.) Then, after filing her application for disability, Plaintiff worked part-time at a church for a period of time, and then at a bar selling pull tabs. (Tr. 522, 545, 554, 672, 647, 676, 681.)

---

[1]     To be eligible for disability insurance benefits, an impairment must be at the disabling level before expiration of insured status on the date last insured. *See Pyland v. Apfel*, 149 F.3d 873, 876 (8th Cir. 1998). However, medical records created after that should also be considered "because [the records] may bear upon the severity of the claimant's conditions before the expiration of his or her insured status." *Martonik v. Heckler,* 773 F.3d 236, 240 (8th Cir.1985) (quoting *Basinger v. Heckler*, 725 F.2d 1166, 1169–70 (8th Cir. 1984)); *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006) ("Evidence from outside the insured period can be used in 'helping to elucidate a medical condition during the time for which benefits might be awarded.'") (quoting *Pyland*, 149 F.3d at 876).

[2]     Throughout this Report and Recommendation, the abbreviation "Tr." is used to reference the Administrative record. (Doc. No. 17.)

2

Plaintiff stated, however, that she was unable to perform the tasks of the job as required without difficulty, and was unable to maintain good attendance. (Tr. 98, 100.)

Plaintiff protectively filed an application for social security benefits on February 27, 2018, alleging November 1, 2015 as her onset date. (Tr. 253.) Her claim for disability is based on the recurring sores and ulcers that are the result of wearing a prosthetic. (Tr. 107.) Plaintiff alleges that the pain associated with these sores and ulcers required her to remove the prosthesis two to three times during an eight-hour period. (Tr. 112.) Plaintiff also claims to struggle with mental health complications resulting from the second accident, and that her medication has stopped working.[3] (Tr. 49.)

Plaintiff's disability claim was denied both initially on October 4, 2018 (Tr. 159), and on reconsideration on January 17, 2019. (Tr. 166.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which was granted and held on May 1, 2020. (Tr. 11.) The ALJ issued a decision on September 29, 2020, concluding that Plaintiff was not disabled as defined in the Social Security Act through September 30, 2017, her date late insured. (Tr. 11–20.) On March 1, 2021, the ALJ's decision became the final decision of the Commissioner when Plaintiff's appeal was denied by the Appeals Council. (Tr. 1–4); 20 C.F.R. § 404.981.

Plaintiff initiated judicial review with this Court on June 14, 2021. (*See* Doc. No. 1, Compl.) The administrative record in this matter was filed on October 15, 2021.

---

[3]    Plaintiff makes no challenges in this appeal relating to her mental health.

3

(Doc. No. 17.) The parties' cross-motions for summary judgment are now before this Court for consideration. (Doc. Nos. 18, 20.)

## DISCUSSION

### I.  Standard of Review

Congress established the standards by which social security disability insurance benefits may be awarded. A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant's impairments must be "of such severity [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A). The claimant bears the burden of proving that he is entitled to disability insurance benefits under the Social Security Act. *See* 20 C.F.R. § 404.1512(a); *Whitman v. Colvin*, 762 F.3d 701, 705 (8th Cir. 2014). Once the claimant demonstrates that he cannot perform past work due to a disability, "the burden of proof shifts to the Commissioner to prove, first that the claimant retains the residential functional capacity to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to do." *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000).

This Court has the authority to review the Commissioner's final decision denying disability benefits to Plaintiff. 42 U.S.C. § 405(g); *Kluesner v. Astrue*, 607 F.3d 533, 536

(8th Cir. 2010). If the Commissioner's decision is supported by substantial evidence in the record as a whole, then the decision will be upheld. 42 U.S.C. § 405(g); *Kluesner*, 607 F.3d at 536 (citations omitted). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). This test requires "more than a mere search of the record for evidence supporting the Secretary's findings." *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987). Substantial evidence in the record may support two conflicting outcomes, creating a "zone of choice" in which the ALJ may exercise discretion to grant or deny benefits. *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citations omitted). This Court will not overturn an ALJ's determination if it falls within that zone, "even if we might have weighed the evidence differently." *Id.* at 939. If, after review, the record as a whole supports the Commissioner's findings, the Commissioner's decision must be upheld, even if the record also supports the opposite conclusion. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008).

## II.     The ALJ's Decision

Following the five-step evaluation set forth in 20 C.F.R. § 404.1520(a),[4] and considering the entire administrative record, the ALJ issued his decision denying

---

[4]     At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. Step two requires the ALJ to determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." At step three, the ALJ determines whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listed impairment. Before step four, the ALJ determines the claimant's residual functional capacity ("RFC"). At step four, the ALJ determines whether the claimant has the RFC to perform the requirements of his past work. And at step five, the

Plaintiff's claim for benefits on September 29, 2020. (Tr. 8–20.) In his decision, the ALJ determined that Plaintiff had the residual functioning capacity ("RFC") to perform light work as defined in 20 C.F.R. § 419.967(b) with some qualifications:

> [T]he claimant had the residual functional capacity to perform light work as defined in 20 C.F.R 404.1567(b) except she can occasionally climb ramps and stairs, never climb ladders, ropes or scaffolds, frequently balance, and occasionally crawl. She is limited to frequent exposure to vibrations and hazards.

(Tr. 17.) Based on Plaintiff's RFC, and based on testimony of the vocational expert, the ALJ found that Plaintiff would be able to perform past relevant work as a customer service representative. (Tr. 20.) Therefore, the ALJ found that Plaintiff was not disabled, as defined by the Social Security Act. (Tr. 20.)

### III. Plaintiff's Challenges to the ALJ's Decision

Plaintiff makes two arguments on appeal. First, Plaintiff challenges the ALJ's RFC determination, asserting that substantial evidence does not support finding that she could perform light work. Then, Plaintiff argues that because the determined RFC is flawed, the vocational expert testimony that considered a hypothetical that included the limitations from that RFC cannot provide substantial evidence to support the ALJ's ultimate conclusion that Plaintiff would be able to perform past relevant work.

#### A. The ALJ's RFC determination is supported by substantial evidence

Plaintiff argues that the RFC articulated by the ALJ, which included a limitation to light work rather than a limitation to sedentary work, does not account for her lack of

---

ALJ determines whether the claimant can do any other work considering his RFC, age, education, and work experience. *See* 20 C.F.R. § 404.1520(a)–(f).

ability to stand or walk for prolonged periods of time. Light work generally requires the ability to stand and walk for up to six hours within an 8-hour workday. *See* Social Security Ruling ("SSR") 83-10 ("The full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."). Plaintiff asserts that her testimony about her difficulties with extended standing and walking while working due to the amputation of her right leg and the need to periodically remove her prosthesis is consistent with the medical records (including records indicating that she visited Tillges Certified Orthotics Prosthetic on several occasions between November 2015 and May 2019 reporting discomfort), and does not support finding that Plaintiff can stand or walk at least six hours of an eight-hour day.

   The relevant time period in this case is from Plaintiff's asserted onset date (November 1, 2015) through her date last insured (September 30, 2017). This Court acknowledges that some records during that time period reflect Plaintiff reporting discomfort from sores on her stump and the subsequent need for pain management. However, having discomfort and the need for pain management does not necessarily equate to having the inability to stand or walk as required by the light exertion level. Moreover, the question for this Court on this appeal is whether the Commissioner's decision is supported by substantial evidence in the record as a whole, even if the record also supports the opposite conclusion.

   The ALJ found that Plaintiff could perform light work with limits in climbing, balancing, and crawling, among other things. Among the records considered when making that determination included medical records reflecting that medication, prosthetic

7

adjustments, and compression stockings controlled Plaintiff's discomfort and that her pain improved. (Tr. 370, 374, 378, 387, 390, 392, 577.) For example, Plaintiff's prosthesis was adjusted in November 2015 and her doctor noted Plaintiff reported she was very comfortable with the adjustment. (Tr. 577.) In December 2016, Plaintiff reported she was in constant pain but that it was only at a 2 out of 10. (Tr. 380.) In January 2017, Plaintiff reported she was getting the benefit from a Lidoderm patch, and by June 2017, she reported no discomfort in her wounded area when using diclofenac cream. (Tr. 374, 378.) Then, in October 2017, she reported again that the lidocaine patches worked well for managing pain and that she did not feel the need to continue attending the pain clinic. (Tr. 370, 372.) Effective treatment is a factor the ALJ can consider that indicates a condition is not disabling. *Bernard v. Colvin,* 774 F.3d 482, 488 (8th Cir. 2014).

In addition, several records during the relevant time period show that Plaintiff herself reported very low pain levels. (Tr. 376, 380–82, 387, 391.) This included after the second motorcycle accident when Plaintiff denied having pain and was treating with Motrin and a lidocaine patch. (Tr. 390.) And, medical records also reflect that Plaintiff's stump was improved to normal conditions and that Plaintiff was observed with a near normal gait. (Tr. 380 (stating that Plaintiff's skin was within normal limits in December 2016); Tr. 378 (stating that Plaintiff benefitted from the Lidoderm patch and did *not* need to take her prosthetic on and off several times a day).) Therefore, even when there were reports of discomfort from time to time, Plaintiff has not shown that she was required to take a break from wearing her prosthesis, which would have affected her ability to

8

stand/walk, for a 12-month continuous period. *See* 42 U.S.C. § 423(d)(1)(A) (stating that the physical impairment must last or be expected to last "for a continuous period of not less than 12 months").

Plaintiff's reported daily activities during the relevant time period also indicate that Plaintiff had the ability to stand and walk for periods consistent with that required by the light exertional level. For example, Plaintiff was working as a waitress in 2015 through March 2016, including full time and part time, and it appears that she only stopped at that time because the business closed. (Tr. 382, 387, 391.) Later in 2016, it was noted that Plaintiff had no problems with personal care tasks, prepared her own meals, and could participate in general chores (Tr. 306–07, 379), and in June 2017, Plaintiff told one of her physicians that she liked to maintain a very active lifestyle while wearing her prosthetic leg. (Tr. 374.) Participating in active daily activities is evidence that an ALJ can consider when weighing subjective complaints of disabling pain. *See Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009) (concluding that "cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain"); *Barnett v. Barnhart*, 362 F.3d 1020, 1023 (8th Cir. 2004) (finding claimant could perform past work in part based on plaintiff's daily activities).

Finally, the only two physicians who provided an opinion about Plaintiff's functional limitations were the State Disability Determination Services reviewing physicians (Dr. Rohini Mendonca and Dr. Hallie Richards), who both concluded that Plaintiff could do light work with limitations – the same limitations the ALJ provided for

in the RFC. (Tr. 135–36, 149–50.) When a reviewing physician's opinion is consistent with the record—which this Court concludes they were here—then the ALJ's considering them is appropriate. *See Twyford v. Comm'r, Soc. Sec. Admin.*, 929 F.3d 512, 518 (8th Cir. 2019) ("The ALJ did not err in considering [the state agency consultant's] opinion along with the medical evidence as a whole, where [the doctor's] opinion was consistent with the evidence.").

For the above reasons, and because the RFC provided by the ALJ in his decision is supported by substantial evidence in the record, the ALJ's determination should be affirmed.

### B. The ALJ's reliance on the vocational expert's hypothetical is supported

Plaintiff claims that the ALJ's step-four determination was not supported by substantial evidence in the record because the ALJ's hypothetical to the vocational expert was incomplete. Plaintiff bases this argument on her claim that the ALJ's RFC determination was incomplete because he did not consider all of the evidence in the record, as stated above. (Pl.'s Mem. 13–14.)

"The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole." *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (quoting *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006)). Because this Court concludes that the ALJ's RFC findings are supported by substantial evidence, the hypothetical question was proper, and the vocational expert's answer constituted substantial evidence supporting the ALJ's denial of benefits. *See Wildman v. Astrue*, 596 F.3d 959, 969–70 (8th Cir. 2010)

(holding that the vocational expert testimony based on a proper RFC constituted substantial evidence for an ALJ to determine claimant could return to past relevant work).

## RECOMMENDATION

Based on the foregoing, and all the files, records, and submissions herein,

**IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 18) be **DENIED**;

2. Defendant's Motion for Summary Judgment (Doc. No. 20) be **GRANTED**;

and

3. Judgment be entered accordingly.

Date: June 13, 2022

*s/ Becky R. Thorson*_____
BECKY R. THORSON
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within fourteen (14) days after being served a copy" of the Report and Recommendation. A party may respond to those objections within fourteen (14) days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).